# Rozelle *v.* Lewis, Appellant.

*Land law—Deed—Boundaries—Courses and distances—Evidence—Oral proof—Statute of frauds.*

The courses and distances in a deed always give way to the boundaries found on the ground, or supplied by the proof of their former existence when the marks and monuments are gone; and this is as true of the grant by an individual as of official surveys. To establish the existence of such marks and monuments parol proof is admissible, and such testimony is not in contravention of the statute of frauds and perjuries.

*Evidence—Witness—Party dead—Executors and administrators.*

Where an executor with power of sale executes a contract in writing to sell the land of his testator, and the executor subsequently dies, the other party to the contract may testify as to matters occurring between him and the executor in the latter's lifetime.

Argued March 6, 1908. Appeal, No. 41, March T., 1908, by defendants, from judgment of C. P. Lackawanna Co., May T., 1900, No. 425, on verdict for plaintiff in case of Orlando Rozelle v. Mary L. Lewis and B. S. Lewis. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

564      ROZELLE *v.* LEWIS, Appellant.

Statement of Facts—Opinion of Court below. [37 Pa. Superior Ct.

Ejectment for land in the borough of Dunmore. Before NEWCOMB, J.

At the trial the jury returned a verdict in favor of the plaintiff.

On rule for a new trial NEWCOMB, J., filed the following opinion:

This action was ejectment. May 17, 1902, there was a verdict for plaintiff subject to a point reserved by former Judge WHEATON of the eleventh district, specially presiding at the trial. Reasons were regularly filed and a rule for new trial allowed May 29, 1902. No motion for judgment was ever filed. But among the files is found such motion with an order of the trial judge indorsed thereon: "Let the within motion be marked filed as of this date, May 29, 1902." In the meantime, although not until nearly five years after the trial, Judge WHEATON retired from office. The charge of the court has never been filed. No explanation of this delay and inattention of counsel is offered.

Under these circumstances both the rule and motion for judgment may be treated as abandoned, and they should accordingly be discharged for want of due prosecution.

On the merits, however, it is believed that the case was for the jury and the verdict should not be disturbed.

The only thing seriously controverted by defendant is the admission of certain declarations of plaintiff's grantor, now deceased, touching the boundary in dispute, and upon which plaintiff's case depends.

The suit involves the location of a town lot on a plot of lands in the borough of Dunmore as "Meylert's Addition to Scranton and Green Ridge." Louisa Gilmore was formerly the owner of block 318 as described in the plot which was of record. This block comprised twenty lots of which the first ten front westerly on Adams avenue. With the exception of Nos. 1 and 10, being corner lots, they are plotted of a uniform width of forty feet. They would appear to have been conveyed to Catherine Schadt in her lifetime. For in 1890, some years after her death, Mrs. Gilmore conveyed them to Charles Tropp of this

city, and Frederick Scheidell of Sullivan county, N. Y., executors of Mrs. Schadt, by deed reciting a former conveyance to the deceased which this was intended to confirm. This deed was duly recorded.

Mrs. Schadt's death occurred in July, 1886. By her will, probated in September following, she devised her estate, real and personal, to her executors in trust to carry out its specific provisions, except so far as they might discharge the bequests out of rents and profits. She further gave the executors power as follows: "In order that this my last will may be fully carried out. I hereby authorize and empower my said executors to sell or convey all or any part of my estate and convert the same into money to be by them securely invested as they may see fit and to that end they are hereby authorized and empowered to make good and sufficient deeds and conveyances of any and all of my said property and invest and dispose of the proceeds as above directed."

The legal title being thus in the executors, in 1893 they conveyed lot No. 7, as described in and by the recorded plot, to Rozelle, the plaintiff, by article of agreement. The article was never recorded, but the vendee took immediate possession in accordance with its terms and improved it with a dwelling house where he has resided ever since. The contractor who built the house was Mr. Lewis, one of the defendants. There was evidence uncontradicted that at that time the corners of the lot upon which the house was built were marked by stakes on the ground; that Mr. Lewis in company with the plaintiff measured between the two on the avenue and found them to inclose forty feet; that in locating the foundation of the house they designed it so as to be twelve feet from lot No. 8 on the northerly side and six feet from No. 6 on the other side, and took measurements for that purpose. The house was twenty-two feet wide.

In 1896 Scheidell, surviving executor of Mrs. Schadt, sold lot No. 8 by articles to B. S. Lewis, Jr., and T. G. Lewis, defendant's sons. There was evidence, though contradicted, that in making their improvements these vendees recognized plaintiff's possession as he claimed it; that in laying a sidewalk

on the avenue in front they conformed to his corner, and in laying a flag walk from front to rear on the southerly side of their lot, the line as he has at all times claimed it to be was discussed between him and them and that accordingly they laid their walk twelve feet from his house in order to conform to the line. There were no fences, but there was evidence that from 1897 until the controversy began in 1899 the strip of land to the south of the flag walk, now in controversy, was used by plaintiff for clothesline posts, one of which stood very close to the walk.

From the time the vendees of lot No. 8 finished their house in 1897 they together with their parents, the defendants here, have lived on the lot. In 1898 their contract was assigned to Mrs. Lewis, the substantial defendant, by her sons. In September the same year title was conveyed to her by the surviving executor. She saw the walk and the clothesline post but never made inquiry of plaintiff as to where he claimed the corners or boundary to be. There is no evidence that anyone other than plaintiff ever used, occupied, or claimed any part of the forty feet south of the flag walk until some time in the fall of 1899. At that time without consulting plaintiff and in his absence Mr. Lewis erected what he called a line fence three and six-tenths feet south of the flag walk, and reduced plaintiff's possession to thirty-six and four-tenths feet. That brought on this suit.

Defendants rely upon what they claim under the advice of surveyors is the correct location of the lot line according to the plot. While not conceding that his location varies from the plot plaintiff relies especially upon the acts and declarations of Tropp in designating the corners of lot No. 7 on the date of his contract as required by him before he would execute it. It was the admission of this evidence that is the matter chiefly in controversy now.

So far as objection went to the competency of the plaintiff to testify to the declarations of the deceased grantor acting as a trustee and executor with power to sell, we fail to see how the rule excluding the testimony of a surviving party, etc., applies, and that was not seriously urged at the argument.

Granting that the witness was competent, then so far as concerns the competency of the evidence it is believed to be subject to the rules governing declarations as to boundaries by a former owner, or his agent, with power to sell. If so the estate of Mrs. Schadt would be bound by the declaration in question. The evidence was clear that at the request of plaintiff before the contract was accepted Mr. Tropp met him on the ground by appointment and there designated the lot described in the contract by corner stakes which he said had been placed by his surveyor. Upon the faith of that plaintiff signed the contract, and the executors stood by and saw him locate and build his house accordingly. This, if found to be the fact, so far as Tropp or his survivor in the trust is concerned, would bind the estate regardless of the true corner under the doctrine of Willis v. Swartz, 28 Pa. 413.

The principle upon which the decision rests is estoppel. It would, therefore, seem that the only other question would be whether the evidence was sufficient to affect Mrs. Lewis with notice of the facts which give rise to the estoppel. In effect as between vendor and vendee in such case the estoppel would amount to a defect of title in the vendor pro tanto to the extent of the discrepancy. When Mrs. Lewis afterwards took title to that, with notice, she took it subject to its infirmity.

Under adequate instructions of the learned trial judge the facts regarding the designation of his corners by the executor were found in plaintiff's favor. It was further left to the jury "to determine under the evidence whether plaintiff's possession was of such character that made it the duty of Mrs. Lewis or her assignors to inquire of the plaintiff the character of his title and the extent of his claim;" and if his "possession was of such character as to put the duty of inquiry as to its extent upon the defendants then defendants would be bound by such facts as may reasonably be concluded would have been made known as a result of such inquiry."

The verdict must be taken to have settled this question of fact in plaintiff's favor. The evidence to be considered by the jury for and against the plaintiff's contention was impartially discussed in a preceding part of the charge. We cannot say

that it was insufficient to warrant the conclusion that defendants had actual notice of the extent of plaintiff's claim and constructive notice of its character, especially in the absence of any evidence that Mrs. Lewis had any knowledge of his contract. There was no evidence of anything said or done by him that would tend to mislead her in the premises. All that he said and did was consistent with the claim he now asserts. Neither she nor her assignors claim to have asserted any other or different line than such as was defined by the flag walk prior to 1899 when for some reason she had a survey made.

The reservation as found in the charge which we have had transcribed was as follows: "I reserve the question whether there is any evidence in the case to be submitted to the jury upon which the plaintiff is entitled to recover." This was to cover defendant's request for binding instructions.

For the reasons stated the point reserved is decided against the defendants, the rule for new trial is discharged, the motion for judgment non obstante denied and thereupon judgment is directed to be entered on the verdict for plaintiff sec reg.

*Errors assigned* were various rulings and instructions.

*R. A. Zimmerman,* for appellants.—The plaintiff was incompetent to testify to any conversation had between himself and the executors, relative to the location of his lot: Duffield v. Hue, 129 Pa. 94; Parry v. Parry, 130 Pa. 94; Bell v. Farmers' Deposit Nat. Bank, 131 Pa. 318; Duffield v. Hue, 136 Pa. 602; Sutherland v. Ross, 140 Pa. 379; Duffield v. Rosenzweig, 144 Pa. 520; Dickson v. McGraw, 151 Pa. 98; Griggs v. Vermilya, 151 Pa. 429; Brothers v. Mitchell, 157 Pa. 484; Tarr v. Robinson, 158 Pa. 60; Wolf v. Wolf, 158 Pa. 621; Huntley v. Goodyear, 182 Pa. 613; Darragh v. Stevenson, 183 Pa. 397; Baldwin v. Stier, 191 Pa. 432; Robbins v. Farwell, 193 Pa. 37; Myers v. Litts, 195 Pa. 595.

In this case, the grantor is dead. His right to affirm or deny the fact or the efficacy or the scope and terms of the alleged conversation and conveyance, having passed to the defendant, the grantee in the conveyance, Rozelle would be incompetent

to testify adversely to her: King v. Humphreys, 138 Pa. 310; Crothers v. Crothers, 149 Pa. 201; Serfass v. Serfass, 14 Pa. C. C. Rep. 97; Robbins v. Farwell, 193 Pa. 37; Baldwin v. Stier, 191 Pa. 432; Rudolph v. Rudolph, 17 Pa. Superior Ct. 558.

Where the description in a deed is plain and without ambiguity, parole evidence is not admissible to identify the property intended to be conveyed: Carroll v. Miner, 1 Pa. Superior Ct. 439; Koch v. Dunkel, 90 Pa. 264.

*George D. Taylor,* for appellee.—At common law, agents who carried on a transaction for one of the parties out of which the litigation arose were always competent to prove the transaction: American Life Insurance, etc., Co. v. Shultz, 82 Pa. 46; Hostetter v. Schalk, 85 Pa. 220.

Under the act of 1887 the same rule on the competency of agents has been applied: Sargeant v. National Life Insurance Co., 189 Pa. 341; Hood v. Insurance Co., 22 Pa. Superior Ct. 244; Allen's Est., 207 Pa. 325; Turner v. McAnany, 5 Kulp, 175.

Lines fixed upon the ground or monuments fixed upon the ground to indicate lines and boundaries, will always control courses, corners and monuments, called for by the deed: Blasdell v. Bissell, 6 Pa. 258; Willis v. Swartz, 28 Pa. 413; Ogden v. Porterfield, 34 Pa. 191; Craft v. Yeaney, 66 Pa. 210; Burkholder v. Markley, 98 Pa. 37; Morse v. Rollins, 121 Pa. 537; Rook v. Greenewald, 22 Pa. Superior Ct. 641; Roos v. Connell, 7 Kulp, 113; Ins. Co. v. Sailer, 67 Pa. 108; Marcy v. Brock, 207 Pa. 95; Barnhart v. Riddle, 29 Pa. 92; Gertzer v. Kammerer, 36 Legal Intel. 392; Van Horne v. Clark, 126 Pa. 411; Penna. Railroad Co. v. Pearsol et al., 173 Pa. 496.

Opinion by Rice, P. J., December 7, 1908:

As to the admissibility of the kind of evidence that was admitted under the offer recited in the first assignment of error, we entertain no doubt. As a general rule lines run and marked on the ground control the courses and distances mentioned in the conveyance, and this is as true of the grant

by an individual as of official surveys. "The courses and distances in a deed always give way to the boundaries found on the ground, or supplied by the proof of their former existence, when the marks and monuments are gone:" Lodge v. Barnett, 46 Pa. 477. Amongst the numerous cases in which this principle has been recognized, and in the application of which parol testimony has been admitted to show the location of the marks and monuments on the ground which the grantor and grantee fixed as the true line, the following are specially pertinent to this case: Blasdell v. Bissell, 6 Pa. 258; Willis v. Swartz, 28 Pa. 413; Dawson v. Mills, 32 Pa. 302; Craft v. Yeaney, 66 Pa. 210; Burkholder v. Markley, 98 Pa. 37; Rook v. Greenewald, 22 Pa. Superior Ct. 641. The admission and giving effect to such testimony is not in contravention of the statute of frauds and perjuries. No estate in land is created or conveyed by parol any more than there is by the adoption of a consentible line, of which it has been said: "The statute is a rule of conveyance; it requires a writing to create an estate or interest in lands, that shall have more force or effect than a lease or estate at will only. But adjoining owners who adjust their division line by parol, do not create or convey any estate whatever between themselves; no such thought or intention influences their conduct; after their boundary is fixed by consent, they hold up to it by virtue of the title deeds, and not by virtue of a parol transfer:" Hagey v. Detweiler, 35 Pa. 409. So in the class of cases we are considering the written contract or deed carries the title. But, as in determining the boundaries of the land granted, where there is a discrepancy between the lines run and marked on the ground and the courses and distances mentioned in the writing, the rule of law is that the former control, resort must necessarily be had to parol testimony in order to apply the grant to the subject-matter. We conclude that upon that principle evidence of the kind under consideration was admissible. The same conclusion is reached by applying the principles of estoppel, as will be seen by an examination of the facts set forth in the opinion of the learned judge below. We refer also to his opinion for an entirely adequate discussion of the ques-

tion whether the defendant had actual or constructive notice of the plaintiff's possession and the extent of his claim.   As to the question of the quantity of evidence required to sustain the plaintiff's contention, and as to the functions of the court and the jury in the determination of such a dispute, it is enough to refer to the case of Rook v. Greenewald, 22 Pa. Superior Ct. 641, and the cases there cited, which are to the effect that in such a dispute the jury are to decide according to the weight of the evidence under appropriate instructions from the court.

The remaining question that requires particular notice is as to the competency of the plaintiff to testify to matters occurring between him and Charles Tropp, the latter being dead at the time of the trial.   The matters necessary to be noticed in the determination of this question are these: Charles Tropp and Frederick Scheidell, the executors of the estate of Catharine Schadt, deceased, who were empowered by her will "to sell or convey all or any part of my estate and convert the same into money, to be by them securely invested as they may see fit," made a contract in writing with the plaintiff for the sale to him of lot No. 7 in a recorded plot of lots.   After the death of Charles Tropp, the surviving executor made a written contract for the sale of the adjoining lot No. 8 to two sons of Mary L. Lewis.   The sons having assigned their interests in the contract to Mary L. Lewis, the surviving executor subsequently conveyed lot No. 8 to her by deed said to contain a warranty against all persons claiming from Catharine Schadt or her executors.   The dispute in this action of ejectment was as to the location of the line between these two lots, the land involved being a strip 3.6 feet in width by 168 feet in depth.   It is claimed that the plaintiff was incompetent under clause e, sec. 5, of the Act of May 23, 1887, P. L. 158, which, so far as material here, reads as follows: "Nor where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such

thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness, to any matter occurring before the death of said party or the adjudication of his lunacy, unless," etc. The contention of the defendant's counsel is that the thing in action in this case was the plaintiff's right to the possession of the premises in dispute; that the right to the possession was claimed under his articles of agreement supplemented by the conversation which he proposed to prove with Charles Tropp; that without this conversation the plaintiff could not recover; and that inasmuch as Charles Tropp was a party to those articles and a party to the conversation, and his right and the right of the estate which he represented in the land in dispute had passed by the deed of the surviving executor to the defendant, Tropp being dead, the foregoing provision of the act of 1887 applies and the plaintiff was incompetent to testify. The appellee's counsel concedes that Mary L. Lewis is entitled to whatever interest in the land involved in this case remained in the estate of Catharine Schadt after the delivery to the plaintiff of his articles of agreement, but contends that whatever that interest was, it passed to the predecessor in title of Mary L. Lewis, not from Charles Tropp but from the estate of Catharine Schadt through its other and surviving representative. Charles Tropp, it is true, was a party to the contract under which the plaintiff claims, but the right which the plaintiff derived thereby was not the personal right of Tropp but the right of the estate which he represented. Again, the subject of controversy was the right to the possession of the strip of land described in the writ, and, to state the proposition in another form, the interest which the defendant represented in that subject of controversy was not the interest of Charles Tropp but the interest of Catharine Schadt or the beneficial owners of her estate, and if this be true the plaintiff in testifying was not testifying under the presumed influence of an interest that was adverse to the right of Charles Tropp. It is not clear therefore that the provision of the act of 1887 above quoted applies in terms to the case in hand, and it is to be borne in

mind that since the passage of the act of 1887 competency is the rule; incompetency the exception. "Departures from the common-law rules of evidence are for the legislature, and, when so made, inequalities, real or apparently so, resulting from the legislative removal of the disqualifications of witnesses cannot be urged as reasons why judges ought not to read the words of legislators as they are written:" Brown, J., in Allen's Estate, 207 Pa. 325; Broadrick v. Broadrick, 25 Pa. Superior Ct. 225. In permitting the plaintiff to testify as to the transactions with Charles Tropp, there was no greater inequality produced than there would have been if the transactions had been with an officer of a corporation, or an agent who had subsequently died. Perfect equality is unattainable, and has not been attempted in this legislation.

The assignments of error are overruled and the judgment is affirmed.